STEPHEN M. HARBER, #119830
AMY A. EVENSTAD, #305828
REGINA ZERNAY, #318228
MCCUNE & HARBER, LLP
515 SOUTH FIGUEROA STREET, SUITE 1100
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: (213) 689-2500 | FACSIMILE: (213) 689-2501
sharber@mccuneharber.com, aevenstad@mccuneharber.com,
rzernay@mccuneharber.com
ATTORNEYS FOR DEFENDANT, JURUPA UNIFIED SCHOOL DISTRICT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON McPHERSON, an individual; A.M., a minor by and through her guardian, Saul Ruiz; MARIBEL MUNOZ, an individual; H.H., a minor by and through her guardian ad litem, Aiysha Hazameh, HANAN HAZAMEH, an individual;<br><br>Plaintiff(s),<br><br>v.<br><br>JURUPA UNIFED SCHOOL DISTRICT; CALIFORNIA INTERSCHOLASTIC FEDERATION; and CALIFORNIA DEPARTMENT OF EDUCATION;<br><br>Defendant(s) | Case No: 5:25-cv-02362-SSS-SP<br>Assigned to Hon. Judge Sunshine Suzanne Sykes / Courtroom 2<br>(Complaint filed on 09/09/25)<br><br>**DEFENDANT JURUPA UNIFIED SCHOOL DISTRICT'S NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS IN PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MOTION TO STRIKE PRAYER FOR PUNITIVE DAMAGES AGAINST THE DISTRICT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(F);**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Notice of Motion; Declaration of Regina Zernay; [Proposed] Order]<br><br>Date:      March 13, 2026<br>Time:      2:00 p.m.<br>Courtroom: 2 |

-1-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

## **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ..................................................................**8**

II.   FACTUAL ALLEGATIONS ................................................**8**

    A.    STUDENTS' PARTICIPATION IN GIRLS' SPORTS ..........................**8**

    B.    ACTIONS OUTSIDE THE STATUTE OF LIMITATIONS ................**10**

    C.    ALLEGATIONS OF SEXUAL HARASSMENT ......................**10**

    D.    A.M. ALLEGES A BALL STRUCK THE SIDE OF HER FACE .......**11**

    E.    MCPHERSON'S COMPLAINTS ......................................**11**

    F.    COMPLAINTS BY A.M. ...............................................**12**

    G.    A.M. AND H.H. REFUSED TO PLAY ON THE VOLLEYBALL TEAM WITH A.H. ..................................**13**

    H.    THE STUDENT PLAINTIFFS AGREE TO WITHDRAW REQUESTS FOR INJUNCTIVE RELIEF. .......................**14**

III.  LEGAL STANDARD FOR A MOTION TO DISMISS ...................**14**

IV.   PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION FOR VIOLATION OF TITLE IX FAIL. .......................**15**

    A.    POLICIES THAT ALLOW ALL STUDENTS EQUAL ACCESS TO SPORTS AND FACILITIES DO NOT VIOLATE TITLE IX. ...........**15**

    B.    PLAINTIFFS CANNOT SHOW DELIBERATE INDIFFERENCE. ..**17**

V.    THE COURT SHOULD DISMISS PLAINTIFFS' 42 U.S.C. § 1983 CLAIMS (THE FOURTH, FIFTH, AND SIXTH CAUSES OF ACTION) ...................**21**

    A.    THE DISTRICT IS IMMUNE FROM SUIT .......................**21**

    B.    EVEN IF THE COURT WERE TO FIND THAT THE DISTRICT IS NOT IMMUNE, THE DISTRICT'S POLICY, WHICH FOLLOWS THE LAW, DOESN'T VIOLATE THE CONSTITUTION ..............**21**

    C.    THERE ARE INSUFFICIENT FACTS TO SUPPORT AN EQUAL PROTECTION VIOLATION ......................................**25**

    D.    THE FIFTH AND SIXTH CAUSES OF ACTION FOR VIOLATION OF THE FIRST AMENDMENT SHOULD BE DISMISSED ..........**26**

Motion to Dismiss FAC – P&As

**1. THE DISTRICT DID NOT VIOLATE THE FREE EXERCISE CLAUSE.** ................................................................................**26**

**2. PLAINTIFFS MARIBEL MUNOZ AND HANAN HAZAMEH LACK STANDING.** ........................................................................**27**

**3. THE SIXTH CAUSE OF ACTION FOR VIOLATION OF THE FREE SPEECH CLAUSE FAILS.** ..........................................**28**

**VI.   SOME OF PLAINTIFFS' ALLEGATIONS ARE BEYOND THE STATUTE OF LIMITATIONS PERIOD** ..........................................**31**

**VII.   PUNITIVE DAMAGES SHOULD BE STRICKEN.** ......................................**31**

**VIII. CONCLUSION.** .................................................................................**32**

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

43800005                                                      Motion to Dismiss FAC – P&As

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville,*
  75 F.4th 760, 769 (7th Cir. 2023) ................................................................16

*Adams v. Johnson,*
  355 F.3d 1179, 1183 (9th Cir. 2004) ...........................................................14

*Anderson v. City of Hermosa Beach,*
  621 F.3d 1051, 1058 (9th Cir. 2010) ...........................................................28

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678 (2009) .............................................................................14

*Barnes v. Gorman,*
  536 U.S. 181, 187–88 (2002) .......................................................................31

*Barren v. Harrington,*
  152 F.3d 1193, 1194 (9th Cir. 1998) ...........................................................25

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,*
  520 U.S. 397, 411-12 (1997) ........................................................................22

*Belanger v. Madera Unified Sch. Dist.,*
  963 F.2d 248, 254–55 (9th Cir. 1992) ..........................................................21

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 570 (2007) .............................................................................14

*Bonelli v. Grand Canyon University,*
  28 F.4th 948, 952–953 (9th Cir. 2022) .........................................................31

*Butters v. James Madison Univ.,*
  208 F. Supp. 3d 745, 760 (W.D. Va. 2016) ................................................19

*C.R. v. Eugene Sch. Dist.*
  *4J,* 835 F.3d 1142, 1150  (9th Cir. 2016) ....................................................30

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

Motion to Dismiss FAC – P&As

*C.W. v. Capistrano Unified Sch. Dist.,*
784 F.3d 1237, 1247 (9th Cir. 2015)................................................................21

*Cantwell v. Connecticut,*
310 U.S. 296, 303–04, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) .........................26

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520, 532 (1993) ...............................................................................24

*City & County of San Francisco v. Trump,*
897 F.3d 1225, 1232 (9th Cir. 2018) ..............................................................23

*City of Newport v. Fact Concerts, Inc.,*
453 U.S. 247, 271 (1981) ................................................................................32

*City of Seattle v. Trump,*
No. 2:25-CV-01435-BJR, 2025 WL 3041905 (W.D. Wash. Oct. 31, 2025)...............23

*Cummings v. Premier Rehab Keller, P.L.L.C.,*
596 U.S. 212, 224 (2022) ................................................................................31

*Davis v. Monroe Cty. Bd. of Educ.,*
526 U.S. 629, 650 (1999) ................................................................................16

*Doe 1 v. Univ. of San Francisco,*
685 F. Supp. 3d 882, 901 (N.D. Cal. 2023) ....................................................20

*Doe v. Horne,*
115 F.4th 1083, 1107 (9th Cir. 2024)..............................................................24

*Doe v. United States,*
58 F.3d 494, 497 (9th Cir. 1995)......................................................................14

*Flores v. Morgan Hill Unified Sch. Dist.,*
324 F.3d 1130, 1134 (9th Cir. 2003)................................................................25

*Franklin v. Gwinnett Cty. Pub. Sch.,*
503 U.S. 60, 74 (1992) ....................................................................................17

*Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist.*
*163,* 315 F.3d 817, 824–25 (7th Cir. 2003)....................................................19

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

*Gebser v. Lago Vista Indep. Sch. Dist.,*
   524 U.S. 274, 285 (1998) ..................................................................17, 31

*Graham v. Connor,*
   490 U.S. 386, 393 (1989 ..........................................................................22

*Grieves v. Superior Court,*
   157 Cal. App. 3d 159, 166 (1984) ............................................................32

*Grimm v. Gloucester Cnty. Sch. Bd.,*
   972 F.3d 586, 616-17 (4th Cir. 2020) .......................................................16

*Hecox v. Little,*
   104 F.4th 1061, 1091 (9th Cir. 2024) .......................................................17

*Karasek v. Regents of Univ. of California,*
   956 F.3d 1093, 1105 (9th Cir. 2020) .........................................................18

*Lilly v. Univ. of California-San Diego,*
   751 F. Supp. 3d 1056, 1069, 1071 (S.D. Cal. 2024) ............................19, 20

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555, 560–61 (1992) ....................................................................27

*Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.,*
   237 F.3d 1101, 1110–11 (9th Cir. 2001) ...................................................21

*Mahmoud v. Taylor,*
   606 U.S. 522 (2025) ..................................................................................28

*Monell v. Department of Soc. Servs.,*
   436 U.S. 658, 694 (1978) ..........................................................................22

*Oden v. N. Marianas Coll.,*
   440 F.3d 1085, 1089 (9th Cir. 2006) .........................................................19

*Parents for Priv. v. Barr,*
   949 F.3d 1210, 1217 (9th Cir. 2020) ....................................................15, 18

*Pierce v. County of Orange,*
   526 F.3d 1190, 1225 (9th Cir.2008) ..........................................................25

Motion to Dismiss FAC – P&As

*Pinard v. Clatskanie Sch. Dist.*
  *6J*, 467 F.3d 755, 770 (9th Cir. 2006) ...................................................... 29

*Ramos v. Nielsen,*
  321 F.Supp.3d 1083, 1131 (N.D. Cal. 2018) ........................................... 25

*San Francisco A.I.D.S. Found. v. Trump,*
  786 F. Supp. 3d 1184 (N.D. Cal. 2025) .................................................... 23

*Sato v. Orange Cnty. Dep't of Educ.,*
  2015 WL 4078195, at *5 (C.D. Cal. July 6, 2015) ............................... 14, 21

*Spence v. Washington,*
  418 U.S. 405, 409-11 (1974) ..................................................................... 29

*Stapleton v. JPMorgan Chase Bank, N.A.,*
  779 F. Supp. 3d 1059, 1064 (N.D. Cal. 2025) ......................................... 27

*Stormans, Inc. v. Selecky,*
  586 F.3d 1109, 1128 (9th Cir. 2009) ........................................................ 26

*Taylor v. Regents of University of California,*
  993 F.2d 710, 712 (9th Cir. 1993) ............................................................ 31

*Van Ort v. Estate of Stanewich,*
  92 F.3d 831, 835 (9th Cir. 1996) .............................................................. 21

## Statutes

42 U.S.C. § 1983 ............................................................................... 2, 8, 21, 32

*Code of Civil Procedure* § 3294 ..................................................................... 32

*Code of Civil Procedure* § 335.1 .................................................................... 31

*Education Code* § 221.5(f) ...................................................... 8, 9, 20, 23, 24, 27, 29, 32

*Government Code* § 818 ................................................................................. 32

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

43800005                                                           Motion to Dismiss FAC – P&As

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

3

## I.    INTRODUCTION

Plaintiffs Madison McPherson, A.M., and H.H. are current or former students of Jurupa Unified School District (the "District") who allege that the District discriminated against them and/or violated their Constitutional rights by allowing a student, A.H., to participate on girls' athletics teams consistent with A.H.'s gender identity over the past four years. A.H.'s participation, however, is permitted pursuant to California Education Code § 221.5(f), which mandates that school districts allow students to participate in athletics teams and use facilities consistent with their gender identity. Although Plaintiffs acknowledge this law, Plaintiffs ask the District to simply disregard it and honor their requests to remove A.H. from the girls' volleyball team and bar A.H.'s access to the locker room. This is not relief that Plaintiffs are entitled to under Title IX, and the District's adherence to this law does not violate any Constitutional rights.

Plaintiffs Maribel Munoz and Hanan Hazameh are the parents of A.M. and H.H., respectively, and each assert a single claim against the District – the fifth cause of action alleging a violation of the Free Exercise Clause of the First Amendment under 42 U.S.C. § 1983. This claim fails for lack of sufficient facts, as well as a lack of standing by the parent-Plaintiffs to sue the District.

Plaintiffs' prayer for punitive damages against the District must be stricken as there are insufficient facts and no legal basis to support an award for punitive damages to each Plaintiff under the causes of action alleged.

As this is the second time that Plaintiffs have attempted to amend their complaint, the District requests that this motion be granted without leave to amend.

## II.    FACTUAL ALLEGATIONS

### A.    STUDENTS' PARTICIPATION IN GIRLS' SPORTS

Plaintiffs acknowledge that the District is required to follow Education Code §

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.,
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

221.5(f), which provides that a student must be permitted to participate in athletic teams and use facilities consistent with the student's gender identity. FAC ¶¶91-95. The District can be subject to corrective action by the California Department of Education if it fails to follow this rule. FAC ¶97.

Consistent with this law, District Administrative Regulation (AR) 6145.2 states that "[e]ach student shall be allowed to participate in any single-sex athletic program or activity consistent with the student's gender identity, of the gender listed on the student's records, for which the student is otherwise eligible to participate." FAC ¶88.

A.H. has participated on the girls' varsity track and field at Jurupa Valley High School (JVHS) from 2022-2023 through the present. FAC ¶¶108-109. A.H. is currently on the girls' varsity volleyball team, and may have also participated in the volleyball team in the 2024-2024 school year, though the FAC is unclear in this regard. FAC ¶122.

Plaintiff Madison McPherson was a senior at JVHS in August 2023, and presumably in the 2023-2024 school year. FAC ¶29. During her junior year, McPherson was captain of the JVHS girls' varsity volleyball team and played varsity track and field. FAC ¶28. As a senior, McPherson did not participate in varsity track and field due to A.H.'s participation in the sport. FAC ¶¶29, 115, 117.

McPherson's sister, Plaintiff A.M., is a senior at JVHS. She was the captain of the varsity volleyball team, and she also participates in track and field. FAC ¶¶31-35, 236. Plaintiffs McPherson, A.M., and their mother are practicing Catholics who believe that a person's gender cannot be changed. FAC ¶43.

H.H. is a senior who plays varsity volleyball, and H.H. has played on the varsity track and field team since 2022-2023. FAC ¶¶37-41. H.H. and her mother are practicing Muslims and allege that their "religious obligations prevent H.H. from exposing her hair and body to males." FAC ¶44.

Plaintiffs allege that "biological males have physiological advantages over biological females." FAC ¶56. Plaintiffs refer to A.H. as a "male student" and complain that A.H. is allowed to compete on girls' sports teams and access girls' facilities, including

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

bathrooms and locker rooms. FAC ¶106. Since the start of this year's volleyball season, the FAC alleges that 10 schools outside of the District have cancelled or forfeited their matches against the JVHS' girls' volleyball team because said teams allegedly refused to compete against A.H. FAC ¶¶ 129-130, 134, 136. In response to cancelled matches and to give students opportunities to compete, JVHS arranged scrimmages, which resulted in a boys' varsity volleyball team playing against the girls' volleyball team. FAC ¶¶134-135.

Plaintiffs complain that they felt unsafe and uncomfortable when A.H. used the girls' locker room, and felt intimidated when A.H. made eye contact while Plaintiffs were changing. FAC ¶¶138-139. On one or more occasions during H.H.'s freshman year (the 2022-2023 school year), A.H. went into the girls' locker room to change while H.H. was in there, and H.H. avoided changing in A.H.'s presence by waiting until A.H. left, using the nurse's bathroom, or changing in the storage room. FAC ¶¶140-141. McPherson and A.M. have also used individual stalls in the locker room or the nurse's bathroom to change, but they allege that these remedies are insufficient. FAC ¶¶142-144.

## B.    ACTIONS OUTSIDE THE STATUTE OF LIMITATIONS

In or about March 2023, A.H. posted a TikTok stating "It must suck to come in second, while I'm over here getting all the medals." FAC ¶113. McPherson believed A.H. was "taunting" McPherson, though no one was named in this post. *Id*. McPherson's mother reported the video to administrators who said they would investigate the issue. FAC ¶114. There are no complaints about A.H. saying anything on social media thereafter.

In August 2023, A.M. remarked about pain after she landed on her chest while diving for a ball during practice, and A.H. responded "Right, it hurts my boobs too when I land on them." FAC ¶151. In August 2023, the parents of McPherson and A.M. complained to a coach about A.H.'s participation in girls' sports. FAC ¶¶184-185. The coach said the administration could "deal with that." FAC ¶186.

## C.    ALLEGATIONS OF SEXUAL HARASSMENT

In October 2023, A.H. told A.M. that A.H. was having "cramps" due to a period; the FAC complains that this "marginalizes the pain shared by most women." FAC ¶152.

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-10-

In July 2024, the McPhersons' held an event at their home and invited the girls' varsity team, including A.H. FAC ¶153. During a conversation about menstrual cycles, A.H. stated, "I have a custom coochie." FAC ¶¶154-156.

Plaintiffs allege that, during a match in August 2024, A.H.'s  hands were on the buttocks of A.M. and A.H. while the team was in a huddle. FAC ¶148. The FAC ambiguously alleges other unspecified "butt tapping" at unknown times involving unknown persons. FAC ¶¶184,189.

### D.    A.M. ALLEGES A BALL STRUCK THE SIDE OF HER FACE

In September 2024, A.H. spiked a ball which struck the side of A.M.'s face; A.M. complains that this occurred because A.H. was "lacking control but wielding male strength." FAC ¶164. A.M. complains that Assistant Principal Zamora, who saw this, should've done more than asking if A.M. needed ice for her face. FAC ¶¶165-166. Later in the 2024-2025 season, A.M. complained that A.H.'s hits were stronger than the players in the boys' program. FAC ¶¶207-208.

### E.    MCPHERSON'S COMPLAINTS

Between 2022 and 2024, McPherson allegedly regularly complained to Volleyball Coach Manu that she was uncomfortable with A.H.'s presence on the team and in the locker room. FAC ¶¶168-171. Coach Manu told McPherson to focus on herself and what McPherson could control. *Id*.

In September 2023, McPherson and her mother complained to Assistant Principal Zamora that A.H. was on the girls' volleyball team. FAC ¶189. Zamora said that the school was following state law, but that she would involve the principal. FAC ¶190.

In October 2023, Principal Morris and Assistant Principal Zamora held a meeting with McPherson and her mother. FAC ¶¶193-197. McPherson expressed a desire for A.H. to be "held accountable," though it is unclear what, other than having a gender identity that Plaintiffs disagreed with, Plaintiffs wanted A.H. to be accountable for. FAC ¶197. The administrators said that A.H. complained that McPherson was, among other things, slandering the transgender community. FAC ¶194. McPherson admitted saying that it was

MCCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

"unfair for biological males to compete in girls' sports." FAC ¶196.

In September 2024, McPherson and her mother complained to a school counselor that they believed it was unfair that A.H. was on the girls' volleyball team; McPherson and A.M. "were uncomfortable changing in the presence of a male student;" and uncomfortable that A.H. touched buttocks during team huddles. FAC ¶¶172-175. The counselor told McPherson and A.M. that they could use the nurse's restroom to change, and that others would address their remaining concerns. FAC ¶177. A few days later, McPherson and her mother met with Assistant Principal Zamora expressing the same concerns; Zamora offered the nurse's bathroom and said that the school was following state law by allowing A.H. on the team. FAC ¶180.

In September 2024, McPherson told Assistant Principal Lopez that McPherson and others felt uncomfortable with A.H. in the locker room. FAC ¶¶209-210. McPherson complained of "butt tapping" and said A.H.'s comments mocked female anatomy. FAC ¶211. Lopez said that the school was required to follow state law, but she would address the "butt tapping" with the coach. FAC ¶213. There are no allegations that any "butt tapping" occurred again.

In October 2024, Principal Reyna told McPherson and her mother that someone said McPherson was "slandering the transgender community." FAC ¶216. McPherson admitted that she said, "males don't belong in women's sports." FAC ¶219. In this conversation, McPherson referred to A.H. as a male, said it was unfair for A.H. to compete on the girls' team, and said that A.H. "doesn't belong" on the team. FAC ¶¶217, 221. Reyna warned McPherson that discriminatory comments about transgender students would be deemed bullying and may prompt disciplinary action. FAC ¶¶218-220, 224.

## F.    COMPLAINTS BY A.M.

In July 2025, A.M. complained to Coach Manu about A.H.'s participation on the team; in response, the coach told A.M. (the team captain) to be friends with and support A.H. on and off the court. FAC ¶227.

On August 22, 2025, A.M.'s mother told an assistant principal that it was unfair that

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-12-

A.H. was on the team and raised "Title IX concerns." FAC ¶229. The matter was referred to the District's Title IX Coordinator, Olga Alferez, who met with A.M. and her mother on August 25, 2025 and opened an investigation. FAC ¶230. On September 4, 2025, A.M. and her mother met with Principal Reyna about their concerns. FAC ¶¶233-235. Reyna said the school was following state law, but still said she would investigate. *Id.*

### G.    A.M. AND H.H. REFUSED TO PLAY ON THE VOLLEYBALL TEAM WITH A.H.

On September 4, 2025, A.M. and H.H. told the coach[1] that they were "uncomfortable sharing the court or locker room with a male athlete and that they could no longer participate in games or practices that included a male athlete," in reference to A.H. FAC ¶236. Given the two Plaintiffs' refusal to play on the team while A.H. played, the coach removed them from the team's group chat the next day. FAC ¶¶236-237. Plaintiffs asked why they were removed and insisted they weren't quitting, and the coach responded with confusion, given their statement that they were quitting playing and practicing. FAC ¶¶236-239. Plaintiffs did not recant or ask to join the team again. The FAC alleges that their removal from the group chat was retaliation for complaining about sharing space with "a male athlete." FAC ¶¶241-242. A school poster was subsequently created that did not identify A.M. and H.H. as members of the team. FAC ¶244.

Plaintiffs filed this lawsuit on September 9, 2025.

Consistent with their statements that they would not play on a team that included A.H., Plaintiffs A.M. and H.H. did not play in a volleyball game on October 3, 2025. FAC ¶247. At this game and at another game on October 8, other volleyball players did not "high five" A.M. and H.H., which Plaintiffs complained about. FAC ¶¶248-253. On October 8 and 22, 2025, Coach Manu told A.M. and H.H. that they may not be able to sit on the bench with their teammates at future volleyball games. FAC ¶¶256-266.

At an October 22, 2025 match, Munoz demanded that A.M. and H.H. be let into the

---

[1] The FAC indicates that H.H never personally complained to an administrator. FAC ¶206.

-13-

game without payment, but she was informed that the two students were not on the team roster. FAC ¶¶268-270. The FAC alleges that Plaintiffs were harassed and intimidated at that game by a parent and the parent's daughter, and/or two adult women. FAC ¶¶271-274. Plaintiffs Munoz and Hazameh reported this conduct to the principal on October 24 and 29. FAC ¶¶276-277.

## H.    THE STUDENT PLAINTIFFS AGREE TO WITHDRAW REQUESTS FOR INJUNCTIVE RELIEF.

Through the parties' meet and confer efforts, Plaintiffs McPherson, A.M., and H.H. have stipulated to withdrawing their requests for injunctive relief. Plaintiffs still seek compensatory and punitive damages, and declaratory relief.

## III.    LEGAL STANDARD FOR A MOTION TO DISMISS

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*, citing *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). When dismissing a complaint for failure to state a claim, a court should not grant leave to amend if the pleading could not possibly be cured by new, truthful allegations. *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995).

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

## IV. **PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION FOR VIOLATION OF TITLE IX FAIL.**

Plaintiffs allege that District Administrative Regulation (AR) 6145.2 is discriminatory; that they were subjected to sexual harassment by A.H. through a single instance of A.H.'s hands on A.M.'s buttocks during a team huddle, remarks involving female anatomy, and by virtue of A.H.'s access to the locker rooms; and that the school was deliberately indifferent to their complaints. FAC ¶¶283-289, 299, 334-342. Plaintiffs claim that allowing A.H. on the team results in unequal treatment, lost opportunities, a hostile competitive environment, invasions of their privacy, and a risk of "unsafe athletic conditions." FAC ¶¶292-321. These claims fail.

### A. **POLICIES THAT ALLOW ALL STUDENTS EQUAL ACCESS TO SPORTS AND FACILITIES DO NOT VIOLATE TITLE IX.**

The question of whether a school district may allow issue a policy allowing a student to use school facilities (including a locker room) "that match their gender identity rather than the biological sex they were assigned at birth" has been settled in the Ninth Circuit in the affirmative in *Parents for Priv. v. Barr*, 949 F.3d 1210, 1217 (9th Cir. 2020) ("*Barr*"). In *Barr*, students opposed such a policy and alleged that it violated their Title IX and Constitutional rights. *Id*. However, the Ninth Circuit affirmed the District Court's decision dismissing the federal claims against the school district for failure to state a claim upon which relief can be granted. *Id*. The Court held:

> We agree with the district court and hold that there is no Fourteenth Amendment fundamental privacy right to avoid all risk of intimate exposure to or by a transgender person who was assigned the opposite biological sex at birth. We also hold that a policy that treats all students equally does not discriminate based on sex in violation of Title IX, and that the normal use of privacy facilities does not constitute actionable sexual harassment under Title IX just because a person is transgender.

*Id*. In *Barr*, the plaintiffs argued that the school district's policy of equal access to facilities

McCUNE & HARBER, LLP
515 South Figueroa St.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

for transgender students violated Title IX because it created a hostile environment on the basis of sex in locker rooms and bathrooms, which made cisgender students feel intimidated and stressed, which may cause them to avoid using the facilities. *Id.* at 1226. The Ninth Circuit stated that "the presence of transgender people in an intimate setting does not, by itself, create a sexually harassing environment that is severe or pervasive." *Id.* at 1227. Further, "just because Title IX authorizes sex-segregated facilities does not mean that they are required, let alone that they must be segregated based only on biological sex and cannot accommodate gender identity. Nowhere does the statute explicitly state, or even suggest, that schools may not allow transgender students to use the facilities that are most consistent with their gender identity." *Id.* Other courts have also concluded that schools must accommodate students' gender identity in its policies. *See e.g. Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616-17 (4th Cir. 2020) [transgender student could not be excluded from bathroom corresponding with their gender identity]; *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023) [stating that Title IX protects discrimination on the basis of gender identity]. Pursuant to the reasoning in *Barr*, AR 6145.2 does not violate Title IX by allowing all students to play sports and use sports facilities consistent with their gender identity.

Moreover, in *Barr*, the Ninth Circuit ruled that deliberate indifference is still required to state a Title IX claim: "even if Plaintiffs are correct that 'Congress intended to preserve distinct privacy facilities based on biological sex' and that the District chose not to do so, that fact alone is insufficient to state a legally cognizable claim under Title IX. Rather, to show that the District violated Title IX, Plaintiffs must establish that the District had actual knowledge of and was deliberately indifferent to harassment because of sex that was 'so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" *Barr*, at 1227, citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

The Ninth Circuit recently ruled that it was appropriate to issue a preliminary injunction to stop implementation of an Idaho statute banning transgender girls from

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-16-

participating in female student athletics, although the Supreme Court has granted certiorari of that ruling. *Hecox v. Little*, 104 F.4th 1061, 1091 (9th Cir. 2024), *as amended* (June 14, 2024), *cert. granted,* 145 S. Ct. 2871 (2025). The *Hecox* decision notes that "the science and the regulatory framework surrounding issues of transgender women's participation in female-designated sports is rapidly evolving" but that "regulatory bodies are best equipped to address" those issues. *Id*. at 1090. This is exactly why the District has relied on the California Department of Education's authority in enacting AR 6145.2, and *Barr* dictates that this policy does not violate Title IX. *Barr* also makes clear deliberate indifference is required in order to assert an actionable Title IX claim against the District, but Plaintiffs fail to adequately plead it in the FAC. *Barr*, at 1227.

## B.    PLAINTIFFS CANNOT SHOW DELIBERATE INDIFFERENCE.

Title IX of the Education Amendments of 1972 bars gender-based discrimination by federally-funded educational institutions. Gender-based harassment may constitute actionable discrimination under Title IX only if the conduct "is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. Importantly, in order to be liable under Title IX for such conduct, the funding recipient itself must exclude persons from participation in, deny persons the benefits of, or subject persons to discrimination in its programs or activities. *Id.* at 641. Accordingly, Title IX does not permit a plaintiff to recover damages for another student's alleged harassment "based on principles of *respondeat superior* or constructive notice, *i.e.,* without actual notice to a school district official" of the offending conduct. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 285 (1998). In this regard, there is no "recovery in damages [under Title IX] against a funding recipient where the recipient is unaware of discrimination in its programs." *Id.* at 285. The "central concern in that regard is with ensuring that 'the receiving entity of federal funds has notice that it will be liable for a monetary award.'" *Id*. at 287, *quoting Franklin v. Gwinnett Cty. Pub. Sch.,* 503 U.S. 60, 74 (1992).

In sum, a Title IX hostile environment claim requires facts that the school district:

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.,
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-17-

(1) had actual knowledge of; (2) and was deliberately indifferent to; (3) harassment because of sex that was; (4) "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Barr*, at 1226, citing *Davis,* 526 U.S. at 650; *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1105 (9th Cir. 2020). A school acts with deliberate indifference when its response to sexual harassment "is clearly unreasonable in light of the known circumstances." *Davis,* at 648. "This is a fairly high standard — a 'negligent, lazy, or careless' response will not suffice." *Karasek*, at 1105 [citations omitted].

*Barr* held that simply allowing transgender people in an intimate setting does not create a sexually harassing environment that is severe and pervasive. *Barr*, at 1227-1229 ["Plaintiffs allegedly feel harassed by the mere presence of transgender students in locker and bathroom facilities. This cannot be enough. The use of facilities for their intended purpose, without more, does not constitute an act of harassment simply because a person is transgender"].

It is anticipated that Plaintiffs will argue that the severe and pervasive conduct is not the District's policy allowing A.H. on the team, but A.H.'s comments about menstruation, touching buttocks in team huddles, and perhaps looking at others in the locker room. However, Plaintiffs do not allege sufficient actual notice of these issues and deliberate indifference in response. When they complained about the locker room, they were given alternatives such as the use of a stall or the nurse's bathroom [*see e.g.* FAC ¶177], which were deemed acceptable alternatives in *Parents for Priv. v. Dallas Sch. Dist. No. 2*, 326 F. Supp. 3d 1075, 1099 (D. Or. 2018), *aff'd sub nom. Barr*, 949 F.3d 1210. The FAC alleges that McPherson and her mother complained in September 2024 about "butt tapping" to a school counselor, who elevated the issue to the principal. FAC ¶¶172-175. At a meeting with the principal, the FAC states that McPherson raised an issue of "butt tapping" (though no specifics as to McPherson are pled) and complained that A.H.'s comments mocked female anatomy, but there are no allegations that "butt tapping" or inappropriate comments followed this meeting, indicating that the principal did in fact

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

address and rectify any concerns about those two issues. FAC ¶¶209-213.

The issues that A.M. complained of involve being hurt during volleyball and being uncomfortable having A.H. on the team and in the locker room. There are no allegations that A.H. intentionally tried to hurt A.M. on the basis of sex; rather, being hit in the side of the face with a ball is something inherent with the sport of volleyball. A.H. was nevertheless told to only hit from the back row. FAC ¶163. And, as noted, simply being in the vicinity of A.H. is not actionable conduct under Title IX.

There is no evidence that H.H. made any complaint to an appropriate school administrator about severe and pervasive discrimination.

Rather than "deliberate indifference" to Plaintiffs' concerns, the FAC describes several steps taken by the District, such as "arranging internal scrimmages among its own volleyball teams" when other schools (not JVHS) forfeited matches against JVHS (presumably resulting in "wins" for the JVHS volleyball team) [FAC ¶135] and providing Plaintiffs access to alternative changing areas [FAC ¶¶141, 177]. Despite the provided remedies, however, Plaintiffs wanted one thing – removal from A.H. from the team. That the District refused to do so does not constitute actionable discrimination under Title IX. "An aggrieved party is not entitled to the precise remedy that he or she would prefer." *Oden v. N. Marianas Coll.,* 440 F.3d 1085, 1089 (9th Cir. 2006). *See also Butters v. James Madison Univ.,* 208 F. Supp. 3d 745, 760 (W.D. Va. 2016) [the court rejected the "argument that the mere presence of [harassing] men in or around the campus could support a finding of deliberate indifference"]; *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163,* 315 F.3d 817, 824–25 (7th Cir. 2003) ["the school may take into consideration administrative burdens or the disruption of other students' or their teachers' schedules in determining an appropriate response"].

Plaintiffs may claim that retaliation is actionable under Title IX, but retaliation still requires protected activity, actual notice of retaliation in response to that protected activity, and deliberate indifference in the face of that knowledge, elements which are missing here. *Lilly v. Univ. of California-San Diego*, 751 F. Supp. 3d 1056, 1069, 1071 (S.D. Cal. 2024).

McCune & Harber, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

-19-

"Protected activity is protesting or otherwise opposing unlawful discrimination, including speaking out against sex discrimination." *Id*. at 1069-70, citing *Doe 1 v. Univ. of San Francisco*, 685 F. Supp. 3d 882, 901 (N.D. Cal. 2023). Here, Plaintiffs' complaints about A.H. being on the team are not protected activity because it was not unlawful for A.H. to be on the team; rather, California Education Code § 221.5(f) requires that the District allow a student to participate in an athletic program consistent with that student's gender identity. Additionally, Plaintiffs complain that Coach Manu removed A.M. and H.H. from the group chat, roster, and team bench after A.M. and H.H. "informed Coach Manu that they were uncomfortable sharing the court or locker room with a male athlete and stated that they could no longer participate in games or practices that included a male athlete" on September 4, 2025. FAC ¶236. Plaintiffs admit that Coach Manu believed Plaintiffs had "chosen not to participate any longer" on the team. FAC ¶238. Alleged actions taken based on this presumption do not demonstrate harassment or retaliation. Instead, at best they show what appears to be a lack of clarity as to whether Plaintiffs were still participating on the team. In any event, Plaintiffs do not allege that they complained to an administrator that they felt Coach Manu was retaliating against them on or after September 4. Any allegations of retaliation fail due to the failure to allege actual notice of retaliation on the part of "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf." *Lilly*, 751 F. Supp. 3d at 1070.

Next, Plaintiffs describe conduct during a school volleyball tournament on October 22, 2025 by third parties who were outside of the school's control, i.e., other student parents and adult spectators. FAC ¶¶243-278. Although Plaintiffs complained to school officials, there are no allegations of any further conduct by third parties, indicating that the issue was resolved; there is no deliberate indifference.

In sum, Plaintiffs' Title IX claims fail because allowing A.H. to participate on girls' sports teams is not actionable discrimination or harassment, and as to the remaining allegations, Plaintiffs do not plausibly allege deliberate indifference in the face of actual

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-20-

knowledge to severe and pervasive sex-based harassment. The first and second causes of action must be dismissed.

## V.    THE COURT SHOULD DISMISS PLAINTIFFS' 42 U.S.C. § 1983 CLAIMS (THE FOURTH, FIFTH, AND SIXTH CAUSES OF ACTION)

### A.    THE DISTRICT IS IMMUNE FROM SUIT

Plaintiffs' fourth, fifth, and sixth causes of action assert claims against the District for violations of Constitutional rights under 42 U.S.C. § 1983. However, a school district is a public entity which is immune from a § 1983 suit under the Eleventh Amendment. *Belanger v. Madera Unified Sch. Dist.,* 963 F.2d 248, 254–55 (9th Cir. 1992). In *Belanger*, the Ninth Circuit held that California's school districts are "agent[s] of the state that perform[]…governmental functions…" *Id*. at 251. As such, California's school districts cannot be held liable under 42 U.S.C. § 1983, because a judgment in the claimant's favor would necessarily be satisfied out of state funds. *Id*. at 251-252. California school districts are accordingly immune to such suits. *Id*. Indeed, in recent years the Ninth Circuit and "every federal district [court] in California [has] cited *Belanger*" for the proposition that a school district cannot be sued for damages under 42 U.S.C. § 1983. *Sato v. Orange Cnty. Dep't of Educ.,* 2015 WL 4078195, at *5 (C.D. Cal. July 6, 2015), citing *C.W. v. Capistrano Unified Sch. Dist.,* 784 F.3d 1237, 1247 (9th Cir. 2015).

### B.    EVEN IF THE COURT WERE TO FIND THAT THE DISTRICT IS NOT IMMUNE, THE DISTRICT'S POLICY, WHICH FOLLOWS THE LAW, DOESN'T VIOLATE THE CONSTITUTION

To establish liability under § 1983 against a public entity, Plaintiffs must show that (1) they were deprived of a constitutional right; (2) the public entity had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1110–11 (9th Cir. 2001), citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996). Section 1983 "is not itself a source of

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-21-

substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393 (1989), citations omitted.

There is no *respondeat superior* liability for a governmental entity for an injury inflicted by its employees, agents, or students. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694 (1978). Instead, a plaintiff must identify a "policy" or "custom" of the District that caused the constitutional violation because of the District's deliberate indifference. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 411-12 (1997); *Monell*, at 690-91. Governmental liability under § 1983 applies only when the entity itself is a moving force behind a deprivation of a federal right. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). An entity's "policy or custom" must have played a part in the federal violation. *Id.*

Here, Plaintiffs allege that AR 6145.2 subjects them to discrimination and unequal opportunities on the basis of sex in violation of the Equal Protection Clause of the Fourteenth Amendment. FAC ¶369. Plaintiffs also allege that AR 6145.2 violates their First Amendment rights. FAC ¶¶396, 420-421. However, said claims have been rejected by the Ninth Circuit which noted that "[t]he potential threat that a high school student might see or be seen by someone of the opposite biological sex while either are undressing or performing bodily functions in a restroom, shower, or locker room does not give rise to a constitutional violation." *Barr*, at 1223, citing the District Court opinion, *Parents for Priv.*, 326 F. Supp. 3d at 1099. The Ninth Circuit rejected the argument that "the Constitution affords a broad privacy right protecting against being exposed in even a partial state of undress to any person of the opposite sex." *Barr,* at 1224. The conclusion was bolstered by the fact that the district in *Barr* provided "protections to those who do not want to share facilities with a transgender student, even though those alternative options admittedly appear inferior and less convenient." *Id*. at 1225.

In *Barr*, the Ninth Circuit agreed that the policy allowing transgender students to utilize facilities in accordance with their gender identity "was not discrimination on the basis of sex" because the policy did not target any of the named plaintiffs because of their

McCUNE & HARBER, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

sex. *Barr*, at 1227. Rather, the policy applied to all students regardless of their sex, and therefore the plaintiffs did not show they were being treated any differently than any other students in the school. *Id*. at 1228. The same is true here; Plaintiffs have not shown how AR 6145.2 treats them any differently.

Here, as in *Barr*, there is no constitutional violation through the District's implementation of AR 6145.2, which was enacted to comply with Education Code § 221.5(f). Moreover, the FAC does not support the inference that AR 6145.2 constitutes deliberate indifference to Plaintiffs' rights under the Equal Protection Clause or the First Amendment where the District is simply following the law it is bound to follow.

At FAC ¶¶71-79, Plaintiffs refer to and rely on Executive Order No. 14168 as a potential argument that the District should not follow Education Code § 221.5(f). The District could not have been in violation of this Order prior to its issuance on January 20, 2025, even if it were controlling, but it is not. Section 8(c) of the Executive Order states: "This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Moreover, this Order does not and cannot operate to repeal Education Code § 221.5(f). *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018). Said Order has already been called into question and enjoined. See e.g. *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184 (N.D. Cal. 2025); *City of Seattle v. Trump*, No. 2:25-CV-01435-BJR, 2025 WL 3041905 (W.D. Wash. Oct. 31, 2025). Accordingly, regardless of this Executive Order, the District is required to comply with the law, Education Code § 221.5(f). In so doing, it implemented AR 6145.2 which allows <u>all</u> students equal access to sports and locker rooms consistent with their gender identity; this does not violate the Equal Protection Clause.[2]

---

[2] For example, a policy stating the reverse (banning transgender students from playing sports consistent with their gender identity) would likely not be upheld. In reviewing such a policy, the Ninth Circuit

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-23-

"The protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993). "[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral . . . and it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* at 533. The Ninth Circuit has held that a policy similar to the District's here "does not infringe Plaintiffs' First Amendment free exercise rights because it does not target religious conduct." *Barr*, at 1218.

Here, as in *Barr*, the FAC contains no allegation suggesting that AR 6145.2 "was adopted with the object of suppressing the exercise of religion." *Id*. at 1235. Rather, the District adopted AR 6145.2 to comply with Education Code § 221.5(f). Moreover, AR 6145.2 "make[s] no reference to any religious practice, conduct, belief, or motivation." *Barr*, at 1235. AR 6145.2 "is not underinclusive, because it does not require only religious students to share a locker room with a transgender student who was assigned the opposite sex at birth." *Id*. at 1236. "The correct inquiry here is whether, in seeking to create a safe, non-discriminatory school environment for transgender students, the [Policy] selectively imposes certain conditions or restrictions only on religious conduct." *Id*. It doesn't, and therefore, it is not subject to strict scrutiny. *Id*. Instead, the policy "must be upheld if it is rationally related to a legitimate governmental purpose." *Id*. at 1238.

Here, the FAC acknowledges that the District's policy was implemented to comply with Education Code § 221.5(f), and it is rationally related to the purpose of eliminating

---

stated: "The Act permits cisgender women and girls to play on *any* teams, male or female, while transgender women and girls are permitted to play *only* on male teams. The Act also permits all students other than transgender women and girls to play on teams consistent with their gender identities; transgender women and girls alone are barred from doing so. This is the essence of discrimination." *Doe v. Horne*, 115 F.4th 1083, 1107 (9th Cir. 2024).

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.,
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

discrimination on the basis of gender identity. In *Barr*, this was sufficient to justify dismissing with prejudice Plaintiffs' First Amendment free exercise claim, and Plaintiffs' fourth, fifth, and sixth causes of action (which seek to hold the District liable for the AR 6145.2 policy) should be dismissed here. *Id*.

## C. THERE ARE INSUFFICIENT FACTS TO SUPPORT AN EQUAL PROTECTION VIOLATION

"To establish a § 1983 equal protection violation, the plaintiffs must show that the defendants, acting under color of state law, discriminated against them as members of an identifiable class and that the discrimination was intentional." *Flores v. Morgan Hill Unified Sch. Dist.,* 324 F.3d 1130, 1134 (9th Cir. 2003). "The first step in an equal protection claim is to establish that the plaintiff was treated differently from similarly situated persons because of a particular protected characteristic. *Id*. at 1134-35; *Pierce v. County of Orange,* 526 F.3d 1190, 1225 (9th Cir.2008). Specifically, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). To establish intentional discrimination, Plaintiffs must prove some animus on the part of the defendants. *Ramos v. Nielsen*, 321 F.Supp.3d 1083, 1131 (N.D. Cal. 2018). Plaintiffs have not shown this here.

Plaintiffs admit that the District informed them that the District is required by state law to allow A.H. to participate in sports teams consistent with A.H.'s gender identity. *See e.g.,* FAC ¶¶ 134, 177, 180, 190, 191, 213, 229, 235. These allegations clearly demonstrate that the District's intent was to follow controlling law as it was mandated to do, not engage in discriminatory conduct based on Plaintiffs' status as females. The existence of AR 6145.2 and the District's actions following it (namely, allowing A.H. to play on girls' sports teams), do not violate the Equal Protection Clause, and the FAC does not contain sufficient plausible allegations of intent to discriminate against Plaintiffs. The fourth cause of action must be dismissed.

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

### D. THE FIFTH AND SIXTH CAUSES OF ACTION FOR VIOLATION OF THE FIRST AMENDMENT SHOULD BE DISMISSED

#### 1. The District Did Not Violate the Free Exercise Clause.

In the fifth cause of action, all Plaintiffs allege that they object to sharing a locker room and being on an athletic team with A.H. due to their religious beliefs, and that their right to free exercise of religious is violated by virtue of the District's implementation of AR 6145.2. FAC ¶¶391, 398-402. These claims fail.

In *Barr*, the Court held that a policy similar to the one at issue here did not violate the First Amendment, and stated:

The Supreme Court has explained that the First Amendment "obviously excludes all 'governmental regulation of religious *beliefs* as such,' " meaning that "[t]he government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." [Citations]. The Supreme Court has also suggested that the government would interfere with the free exercise of religion impermissibly if it sought to ban the performance of or abstention from certain physical acts, but "only when [those acts] are engaged in for religious reasons, or only because of the religious belief that they display." [Citation]. Nevertheless, the "freedom to act" pursuant to one's religious beliefs "cannot be" absolute; "[c]onduct remains subject to regulation for the protection of society." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1128 (9th Cir. 2009) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)). Thus, "[t]he *Cantwell* right to freely exercise one's religion ... 'does not relieve an individual of the obligation to comply with a "valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his [or her] religion prescribes (or proscribes)." ' " *Id.* at 1127.

-26-

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST;
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

*Barr*, at 1233 (some citations omitted).

The FAC does not allege that Plaintiffs ever requested a specific religious accommodation from the District; instead, the FAC states that they felt that they were "unable to state their religious objections." FAC ¶47. Plaintiffs have not alleged any facts indicating that a specific act of a District employee was aimed at suppressing Plaintiffs' religious beliefs. When Plaintiffs complained about sharing a locker room with A.H., Plaintiffs were given alternative accommodations, such as the use of a stall or the nurse's bathroom. The FAC, as plead, indicates that the District was simply allowing A.H. to use the locker room and play on the sports teams consistent with her gender identity, as required by Education Code § 221.5(f). This does not constitute a violation of Plaintiffs' First Amendment rights, and the fifth cause of action should be dismissed.

### 2.    Plaintiffs Maribel Munoz and Hanan Hazameh Lack Standing.

Plaintiffs Maribel Munoz and Hanan Hazameh are the mothers of Plaintiff A.H. and H.H., respectively. They assert the Fifth Cause of Action for Violation of the Free Exercise Clause under a theory of "Parental Free Exercise" of religion. *See* FAC pp. 60:15-62:2. The two parent-Plaintiffs lack standing to assert this claim.

The constitutional minimum of standing contains three elements: (1) An injury in fact; (2) A causal connection between the injury and the conduct complained of; and (3) It must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) [internal citations omitted]; *see also Stapleton v. JPMorgan Chase Bank, N.A.*, 779 F. Supp. 3d 1059, 1064 (N.D. Cal. 2025). The first essential element of standing, an "injury in fact," is described as "an invasion of a legally protected interest which is (a) concrete and particularized" and "(b) 'actual or imminent, not 'conjectural' or 'hypothetical.''" *Id.*

A.M. and H.H. are high school students at JVHS. Maribel Munoz and Hanan Hazameh are not. The conduct at issue is related to A.M. and H.H.'s involvement in the track and field and volleyball teams, and the District's regulation of *students* pursuant to AR 6145.2 and Education Code § 221.5(f). Accordingly, the parent Plaintiffs have no

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-27-

standing to bring this cause of action.

Through meet and confer efforts, Plaintiffs claimed that Ms. Munoz and Ms. Hazameh have standing based on the recent U.S. Supreme Court case, *Mahmoud v. Taylor*, 606 U.S. 522 (2025). *Mahmoud* upheld a parental free-exercise challenge raised when an elementary school removed a parental "opt-out" of curriculum based on books that the parents found contrary to their religious beliefs. Unlike *Mahmoud*, the present case does not involve the absence or removal of an "opt-out" for the parents. Moreover, *Mahmoud* noted that its inquiry involved "elementary and public school" aged children, not high school seniors. *Id*. at 554-555. Given the absence of any issue involving a parental "opt-out" option, and the absence of any regulation that regulates parent conduct at all, *Mahmoud* is inapplicable. Plaintiffs Maribel Munoz and Hanan Hazameh have not suffered an injury-in fact by virtue of the implementation of AR 6145.2.

Even if the Court were to find standing, there are insufficient facts to support a claim that the District violated the First Amendment rights of the two parent Plaintiffs to a free exercise of religion. There are no facts that any school official acted with any intent to prevent the parent Plaintiffs from exercising their religion. Accordingly, the fifth cause of action alleged by Munoz and Hazameh should be dismissed.

**3.     The Sixth Cause of Action for Violation of the Free Speech Clause Fails.**

Like the fifth cause of action, Plaintiffs allege that implementation of AR 6145.2 violates their free speech rights under the First Amendment, but this claim fails. The First Amendment prohibits laws "abridging the freedom of speech." U.S. Const. amend. I. Although "pure speech" or "inherently expressive speech" is generally entitled to First Amendment protection, conduct intending to express an idea is constitutionally protected only if it is "sufficiently imbued with elements of communication," meaning "an intent to convey a particularized message is present, and the likelihood is great that the message will be understood by those who view it." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1058 (9th Cir. 2010) (alterations and internal quotation marks omitted), quoting

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-28-

*Spence v. Washington*, 418 U.S. 405, 409-11 (1974). As explained above, AR 6145.2 does not violate the First Amendment because its purpose is not to suppress speech, but to allow *all* students to play on sports teams consistent with their gender identity.

Outside of the challenge to AR 6145.2, Plaintiffs allege that they were retaliated against for speaking out against this policy, but this claim also fails. "To establish a First Amendment retaliation claim in the student speech context, a plaintiff must show that (1) [s]he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.[ ]If the plaintiff establishes the elements of a retaliation claim, 'the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct.'" *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006).

Plaintiffs claim, at FAC ¶¶ 421-423: "Plaintiffs' objections to being compelled to compete with and against a male athlete in girls' sports, and to share locker rooms with a male, constitute speech on matters of profound public concern, including fairness in athletics, safety, privacy, and the integrity of girls' sports... Defendants, acting under color of state law, created and maintained an intentionally hostile environment designed to suppress Plaintiffs' views. Plaintiffs were intimidated, threatened, and pressured to self-censor their objections to competing with and against a male athlete... *School administrators warned Plaintiff McPherson that if she made any comments regarding A.H. or transgender athletes, she would face immediate suspension.*" [Emphasis added.] As explained above, comments that can be seen as discriminatory, such as misgendering someone, do not constitute protected activity for which a retaliation claim may lie. Plaintiffs repeated complaints about the District's actions in following AR 6145.2 are also not protected activity, because Plaintiffs were not complaining about unlawful conduct.

The District was lawfully complying with Education Code § 221.5(f), and repeated objections to transgender rights could be considered bullying and/or hate speech, which is

McCUNE & HARBER, LLP
515 South Figueroa St.
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-29-

not protected by the Constitution, and the District has appropriate interests in stopping such speech to avoid further disruptions at sporting events and address A.H.'s complaints. It is well-settled that "schools may restrict speech that 'might reasonably lead school authorities to forecast substantial disruption of or material interference with school activities' or that collides 'with the rights of other students to be secure and to be let alone.'" *C.R. v. Eugene Sch. Dist. 4J,* 835 F.3d 1142, 1150  (9th Cir. 2016), internal citations omitted.

Plaintiffs acknowledge that they were told many times that the District was simply following existing state law; thus, the District's actions were taken to advance a substantial and legitimate state interest. As pleaded, Plaintiffs allege the District only warned McPherson that "if she made any comments to her peers about transgender students or about A.H., it would result in suspension" [FAC ¶218] which "would be deemed bullying and grounds for suspension" [FAC ¶220] and this warning came after A.H. complained about McPherson's prior comments [FAC ¶194]. Plaintiffs do *not* allege that McPherson was prevented from sharing her views on AR 6145.2 (which McPherson and Plaintiffs regularly expressed); rather she was told to avoid discriminatory and/or bullying speech after A.H. complained. The allegations fail to indicate that the District was motivated by anything other than complying with the Education Code while taking into consideration all students' rights to be free from discrimination, and not because it was offended by McPherson's viewpoint or disagreed with her views.

When McPherson and the other Plaintiffs mis-gendered A.H., they were told not to do so, and instead to support A.H. FAC ¶429. When A.M. and H.H. refused to play alongside A.H. and would not participate in games or practice, Plaintiffs were stating that they would no longer be part of the team. FAC ¶430. They were then removed from the team group chat and the public roster. The conduct described does not rise to the level of a violation of the Free Speech Clause. Rather, the allegations demonstrate that the District was attempting to follow the controlling law, to avoid the substantial disruption of or material interference with school activities, and to prevent conduct that collided with the

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.,
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

-30-

rights of other students, all within the mandates of the Constitution. Accordingly, Plaintiffs' fifth and sixth causes of action for First Amendment Violations must be dismissed.

## VI.    SOME OF PLAINTIFFS' ALLEGATIONS ARE BEYOND THE STATUTE OF LIMITATIONS PERIOD

To the extent that Plaintiffs allege harm before September 2023, said allegations must be disregarded as being outside the statute of limitations. The applicable state personal injury statute of limitations determines the length of the limitation period under which to bring federal causes of action seeking monetary damages. *Taylor v. Regents of University of California*, 993 F.2d 710, 712 (9th Cir. 1993); *Bonelli v. Grand Canyon University*, 28 F.4th 948, 952–953 (9th Cir. 2022). In California, the statute of limitations for personal injury actions is two years. Cal. Code Civ. Proc., § 335.1. This lawsuit was filed on September 9, 2025. The statute of limitations is two years, meaning that Plaintiffs' causes of action must have accrued on or after September 9, 2023. Any allegations before that date are not actionable and must be disregarded and/or stricken.

## VII.    PUNITIVE DAMAGES SHOULD BE STRICKEN.

"Upon motion made by a party before responding to a pleading... the judge may order stricken from any pleading any insufficient defense or any... immaterial [or] impertinent... matter." FRCP 12(f). Here, all Plaintiffs seek punitive damages against the District, but this request must be stricken.

Title IX is contractual in nature. *See Gebser,* 524 U.S. at 275. Based on its contractual nature, punitive damages are not available under Title IX. *Barnes v. Gorman*, 536 U.S. 181, 187–88 (2002); *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 224 (2022).

Similarly, since California school districts are immune from suit for claims brought under USC § 1983, any punitive damages sought pursuant to § 1983 also are not available

McCUNE & HARBER, LLP
515 South Figueroa St.
Los Angeles, CA 90071
(213) 689-2500
Fax (213) 689-2501

-31-

against a California school district, such as the District here. Governmental bodies are also "immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981).

California law does not allow for the recovery of punitive damages from the District. Specifically, California Government Code § 818 states: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." The District is a public entity entitled to invoke the protections of California Government Code § 818. The District acknowledges that Plaintiffs allege that they do not assert any state law claims, and Plaintiffs therefore claim that Government Code § 818 shouldn't apply. But Plaintiffs *are* alleging discrimination (and are therefore seeking punitive damages) relative to the District's implementation of a state statute - Education Code § 221.5(f). Therefore, the District cannot be liable for punitive damages simply by virtue of its implementation of this statute.

Moreover, in California, punitive damages are only recoverable for intentional torts when there is clear and convincing evidence that a defendant "has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. "Not only must there be circumstances of oppression, fraud or malice, but facts must be alleged in the pleading to support such a claim." *Grieves v. Superior Court*, 157 Cal. App. 3d 159, 166 (1984). Punitive damages are generally appropriate to induce and otherwise encourage a party to follow a law, if a party willfully fails to do so. Here, however, the District was already following the law and complying with Education Code § 221.5(f), indicating that punitive damages have no purpose here. There are no facts supporting the conduct necessary to support an award of punitive damages to any Plaintiff at all.

## VIII.  **CONCLUSION.**

Based on the foregoing reasons, Defendant Jurupa Unified School District respectfully requests that its Motion be granted in its entirety, without leave to amend.

McCUNE & HARBER, LLP
515 SOUTH FIGUEROA ST.,
LOS ANGELES, CA 90071
(213) 689-2500
Fax (213) 689-2501

DATED:     January 9, 2026          McCUNE & HARBER, LLP

By:_____
          STEPHEN M. HARBER, ESQ.
          AMY A. EVENSTAD, ESQ.
          REGINA ZERNAY, ESQ.
Attorneys for Defendant, JURUPA
UNIFIED SCHOOL DISTRICT

43800005                                          Motion to Dismiss FAC – P&As