ADVOCATES FOR FAITH & FREEDOM
Robert H. Tyler (SBN 179572)
btyler@faith-freedom.com
Bradley Greenman (SBN 347609)
bgreenman@tylerlawllp.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone: (951) 304-7583

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MADISON MCPHERSON, an individual; A.M., a minor by and through her guardian ad litem, Saul Ruiz, MARIBEL MUNOZ, an individual; H.H., a minor by and through her guardian ad litem Aiysha Hazameh, HANAN HAZAMEH, an individual;<br><br>Plaintiff(s)<br><br>v.<br><br>JURUPA UNIFIED SCHOOL DISTRICT; CALIFORNIA INTERSCHOLASTIC FEDERATION; and CALIFORNIA DEPARTMENT OF EDUCATION;<br><br>Defendant(s) | Case No.: 5:25-cv-02362<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION**<br><br>Date: July 3, 2026<br>Time: 2:00 p.m.<br>Dept: 2<br>Judge: Honorable Sunshine S. Sykes |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 3, 2026, at 2:00 p.m., or as soon thereafter as counsel may be heard via Zoom in the courtroom of the Honorable Sunshine Suzanne Sykes, located in the United States Courthouse, 3470 Twelfth Street, Riverside, California 92501, Plaintiffs Madison Mcpherson, an individual; A.M., a minor by and through her guardian ad litem, Saul Ruiz, Maribel Munoz, an individual; H.H., a minor by and through her guardian ad litem Aiysha Hazameh,

Hanan Hazameh, an individual, will hereby and do move this Court to bring the present Motion for Reconsideration of this Court's May 7, 2026, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

This motion is based upon this Notice of Motion and the attached Memorandum of Points and Authorities, Declaration of Robert H. Tyler, filed concurrently herewith, all the pleadings, files, and records in this proceeding, any matters to which the Court may properly judicially notice at the pleadings state, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED: June 5, 2026

ADVOCATES FOR FAITH & FREEDOM

/s/ Bradley Greeman
Bradley Greenman, Esq.
Attorneys for Plaintiffs

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ I

TABLE OF AUTHORITIES ........ II

I. INTRODUCTION ........ 1

II. STANDARD ........ 1

III. LAW AND ANALYSIS ........ 1

- A. The Court Erred By Dismissing Plaintiffs' Section 1983 Claims (Claims 4, 5, And 6) With Prejudice And Without Leave To Amend Their Claims To Add Nominal Damages Claims Against Individual State Actors ........ 1
  - 1. Plaintiffs' Clearly Established Free Speech Rights were Violated by Individual School Officials ........ 3
  - 2. Plaintiffs' Clearly Established Free Exercise Rights Were Violated by Individual School Officials ........ 4
- B. The Court Erred In Dismissing Plaintiffs' Alternate Title IX Theories For Sex Discrimination ........ 5
  - 1. The Court Committed Clear Error by Dismissing Portions of Plaintiffs' Sexual Harassment Claim Because the District's Minimal Action Does Not Rise Above the Level of Deliberate Indifference ........ 6
  - 2. The Court Erred in Dismissing Plaintiffs' Claims for Failure to Provide Effective Accommodation and Failure to Provide Equal Treatment ........ 9
    - a. Defendant School District failed to effectively accommodate Plaintiffs ........ 10
    - b. Defendant School District failed to provide equal treatment or opportunity ........ 12

IV. CONCLUSION ........ 13

CERTIFICATE OF COMPLAINCE ........ 13

# TABLE OF AUTHORITIES

Page(s)

Cases

*389 Orange St. Partners v. Arnold*,
179 F.3d 656 (9th Cir. 1999) .......... 1
*Clark v. Arizona Interscholastic Ass'n*,
695 F.2d 1126 (9th Cir. 1982) .......... 12
*Clark ex rel. Clark v. Ariz. Interscholastic Ass'n*,
886 F.2d 1191 (9th Cir. 1989) .......... 10, 12
*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*,
526 U.S. 629, 650 (1999) .......... 6, 7
*Doe v. Taylor Indep. Sch. Dist.*,
15 F.3d 443 (5th Cir. 1994) .......... 6
*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005) .......... 6
*Donovan v. Poway Unified School Dist.*,
167 Cal.App.4th 567 (2008) .......... 8
*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .......... 2
*Espinoza v. Montana Dept. of Revenue*,
591 U.S. 464 (2020) .......... 4
*Karasek v. Regents of Univ. of California*,
956 F.3d 1093 (9th Cir. 2020) .......... 8
*Kennedy v. Bremerton School Dist.*,
597 U.S. 507 (2022) .......... 4
*Mahmoud v. Taylor*,
606 U.S. 522 (2025) .......... 4, 5
*Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .......... 1
*Mitchell v. Washington*,
818 F.3d 436 (9th Cir. 2016) .......... 3
*O'Connor v. Bd. of Educ. of Sch. Dist. 23*,
449 U.S. 1301 (1980) .......... 12
*Pearson v. Callahan*,
555 U.S. 223 (2009) .......... 3
*Reed v. Lieurance*,
863 F.3d 1196 (9th Cir. 2017) .......... 9
*Rel. Callahan v. Gustine Unified School Dist.*,
678 F.Supp.2d 1008 (E.D. Ca 2009) .......... 6

*Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950 (9th Cir. 2013) ........ 1
*Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34 (2d Cir. 2023) ........ 12
*Tinker v. Des Moines Independent Comm. School Dist.*, 393 U.S. 503 (1968) ........ 4
*United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948) ........ 1
*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ........ 2, 3
*Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282 (11th Cir. 2007) ........ 7
*Wisconsin v. Yoder*, 406 U.S. 205 (1972) ........ 4, 5
*Wong v. Bell*, 642 F.2d 359 (9th Cir. 1981) ........ 9
*Wyler Summit P'ship v. Turner Broad Sys., Inc.*, 135 F.3d 658 (9th Cir. 1998) ........ 6
*Zeno v. Pine Plains Cent. School Dist.*, 702 F.3d 665 (2d Cir. 2012) ........ 7

Rules

Fed. R. Civ. P. 12(b)(6) ........ 9
Fed. R. Civ. P. 15 ........ 2

Regulations

34 C.F.R. § 106.41(c)(1) ........ 11
34 C.F.R. § 106.41(c)(2)–(10) ........ 12

Other Authorities

44 Fed. Reg. 71,417 ........ 10, 11
44 Fed. Reg. 71,418 ........ 10
C.D. Cal., L.R. 7-18 ........ 1

## I. INTRODUCTION

Plaintiffs Madison Mcpherson, an individual; A.M., a minor by and through her guardian ad litem, Saul Ruiz, Maribel Munoz, an individual; H.H., a minor by and through her guardian ad litem Aiysha Hazameh, Hanan Hazameh, an individual, bring the present Motion for Reconsideration of this Court's May 7, 2026, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. For the reasons laid forth below this Court this Court erred.

## II. STANDARD

A motion for reconsideration is appropriate if "the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). "Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also* C.D. Cal. L. R. 7-18 (stating a motion for reconsideration of an order is appropriate if there is a manifest showing of a failure to consider material facts presented to the Court before the Order was entered).

## III. LAW AND ANALYSIS

### A. The Court Erred By Dismissing Plaintiffs' Section 1983 Claims (Claims 4, 5, And 6) With Prejudice And Without Leave To Amend Their Claims To Add Nominal Damages Claims Against Individual State Actors

Plaintiffs First Amended Complaint brought section 1983 claims against Defendants for violating their Constitutional Rights and sought injunctive relief. However, since Plaintiffs graduated early, this Court held their claims for injunctive relief have been rendered moot. ECF 47, Page.ID 582. The proper claim now is for nominal damages against the individual school administrators.

In this way, this case is analogous to *Uzuegbunam v. Preczewski*, where the Supreme Court decided whether a claim for nominal damages could be sustained against a school for violating a student's free speech. 592 U.S. 279 (2021). In *Uzuegbunam*, a student sought to enjoin a school policy, but the challenge became moot when the policy was changed. *Id*. at 284. The Supreme Court noted a challenge for nominal damages saved the claim from mootness as nominal damages provides "relief on the merits of [a] claim" that "are in fact damages paid to the plaintiff" and which "affec[t] the behavior of the defendant towards the plaintiff" and as such "independently provide redress." *Id*. at 291 (citations omitted) (alternation in original).

This Court dismissed Plaintiffs' section 1983 claims against the school, holding claims for injunctive relief are moot due to Plaintiffs' early graduation and that claims for monetary damages against are barred by Eleventh Amendment immunity. *See* ECF 47 at Page.ID 572. The Court erred by dismissing Plaintiffs section 1983 claims with prejudice without leave to amend because the claims can and should survive. Plaintiffs First Amended Complaint sought nominal damages but requires amendment to name the individual defendants whose acts infringed upon Plaintiffs' First Amendment rights, namely Coach Manu, Principal Reyna, Principal Morris, Principal Moerer, Assistant Principal Zamora, Assistant Principal Lopez, and the Title IX Coordinator, Olga Alferez.

Generally, "leave shall be freely given when justice so requires." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003); *see also* Fed. R. Civ. P. 15. This policy should be "applied with extreme liberality." *Eminence Capital*, 316 F.3d at 1051 (citation omitted). Only where there is undue delay, bad faith, dilatory motive by the movant, repeated failures to cure a deficiency, undue prejudice, or futility should the denial of the request be considered. *Id*. at 1052.

In the present matter, the Court did not provide reasoning for not permitting Plaintiffs' leave to amend but allowed leave to amend other issues. ECF 47 Page.ID

582–83. Because none of the reasons for denying leave are present, the Court erred by not permitting Plaintiffs leave to amend on their section1983 claims.

Plaintiffs have not delayed seeking leave, as they are doing so immediately after dismissal of their official capacity claims. Neither is there any evidence of bad faith nor evidence that Defendants will be prejudiced, as this takes place even before discovery has begun.

Plaintiffs do not dispute that dismissal against the school was appropriate, but the Eleventh Amendment does not bar nominal claims for damages against state officials in their personal capacities. *Uzuegbunam*, 592 U.S. at 279; *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016). Officials may be sued in their personal capacities when their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Mitchell*, 818 F.3d at 443 (citation omitted).

A two-part inquiry is used; a court must determine whether: (1) the facts adduced constitute the violation of a constitutional right and (2) the constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

1. *Plaintiffs' Clearly Established Free Speech Rights were Violated by Individual School Officials*

Plaintiffs can demonstrate their First Amendment Free Speech Rights were violated. Plaintiffs were retaliated against for reporting to school administrators that they were intentionally discriminated against on the basis of sex and for discussing their views that it was unfair for biological boys to play on the girls' teams. FAC ¶¶ 367–386. Coach Manu explicitly retaliated against A.M. and H.H. when they expressed their discomfort with A.H.'s statements and his presence on the team. *See* FAC ¶¶ 167–279.

Coach Manu and the administrators constructively removed Plaintiffs from the volleyball team in retaliation to Plaintiffs speech. *Id*. Principal Reyna threatened to

suspend Plaintiff McPherson on multiple occasions if Plaintiff commented on the unfairness of allowing males to participate on the "girls'" teams. *Id*. at ¶¶ 218–22, 408, 423–25. On other occasions, school officials have threatened to retaliate against Plaintiffs if they voiced concerns on the issue. *Id*. at ¶¶ 416, 435. Defendants have acted in retaliation against Plaintiffs and attempted to silence them in other ways, including removing them from team chats, the bench during games, and ultimately, from the volleyball team. *Id*. at ¶¶ 237–79, 416, 435.

As to the second part of the test, at this point there is no question that a student's right to comment on issues of public concern is clearly established. *See Tinker v. Des Moines Independent Comm. School Dist.*, 393 U.S. 503 (1968).

2. *Plaintiffs' Clearly Established Free Exercise Rights Were Violated by Individual School Officials*

Plaintiffs can also demonstrate that their Free Exercise Rights under the First Amendment were also violated by school officials. FAC ¶¶ 387–418. The Free Exercise Clause protects "the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of" religious acts. *Kennedy v. Bremerton School Dist*., 597 U.S. 507, 524 (2022). Parent Plaintiffs have a right to "hold religious beliefs of all kinds to live out their faiths in daily life through the performance of" religious acts, which puts limits "on the government's ability to interfere with a student's religious upbringing in a public-school setting." ECF 47 Page.ID 473 (citing *Mahmoud v. Taylor*, 606 U.S. 522, 546 (2025); *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972); *Espinoza v. Montana Dept. of Revenue*, 591 U.S. 464, 486 (2020) (parents' rights are violated when by government policies that "substantially interfer[e] with the religious development" of children"). Here, school officials' enforcement of school policies and failure to investigate Plaintiffs' claims have interfered with Plaintiff Parents' ability to raise and instruct their children in accordance with their own religious convictions and the children's ability to live in

accordance with their beliefs. It likewise interfered with Plaintiff students' Free Exercise rights.

This right has been long established. *See Yoder*, 406 U.S. at 218. This right was most recently affirmed in *Mahmoud v. Taylor*, where the Court held that a school policy introducing storybooks with inappropriate sexually explicit content violated parent's Free Exercise rights. 606 U.S. at 546. The Court did not hold its ruling was novel, but that it derived from longstanding precedent. *See id*. at 545–56. Here, the offenses are much more serious, as A.H. is directing inappropriate sexually explicit comments and physical touching at, and invading the intimate privacy of, Plaintiff Students.

By naming Coach Manu, Principal Reyna, Principal Moerer, Principal Morris, Assistant Principal Lopez, and Title IX Coordinator Olga for their roles in retaliating against Plaintiffs for exercising First Amendment Rights, Plaintiffs would remedy the alleged defects noted in the Court's order and state a viable First Amendment claim. Accordingly, the Court clearly erred by dismissing Claims 4, 5, and 6 without granting leave to amend

**B. The Court Erred In Dismissing Plaintiffs' Alternate Title IX Theories For Sex Discrimination**

Plaintiffs' first cause of action alleges sex discrimination under Title IX based on three separate theories: (1) sexual harassment; (2) failure to provide effective accommodation; and (3) failure to provide equal treatment.

With respect to the sexual harassment theory, the Court permitted the claim to proceed insofar as it was based on allegations of sexual touching but dismissed the claim to the extent it was premised on Plaintiffs being required to share locker rooms and bathrooms with a biological male. ECF 47 at Page.ID 578. As to the remaining two theories, the Court dismissed them *sua sponte* based on arguments it raised on its own initiative, without providing Plaintiffs notice or an opportunity to respond. ECF

47, Page.ID at 579–81. For the reasons set forth below, the Court committed clear error in each instance.

1. *The Court Committed Clear Error by Dismissing Portions of Plaintiffs' Sexual Harassment Claim Because the District's Minimal Action Does Not Rise Above the Level of Deliberate Indifference*

The Court held that Plaintiffs' Title IX Sexual Harassment claim related to sharing a locker room with a biological male failed because, as a matter of law, the District was not deliberately indifferent since it had taken "some remedial action." ECF 47, Page.ID 578–79. Specifically, the Court relied on the District's offer of alternative changing room during home games and school officials' assurances that Plaintiffs' concerns would be addressed "at a later time." *Id.*

The Court clearly erred as failing to draw all inferences in Plaintiffs' favor or to apply the correct legal standard. Because Defendants' motion to dismiss was before the Court, all reasonable inferences in the Plaintiffs favor. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). At the motion to dismiss stage, all factual allegations must be construed in the light most favorable to the non-moving party. *Wyler Summit P'ship v. Turner Broad Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).

Deliberate indifference to student-on-student harassment is a viable Title VII claim when a school demonstrates deliberate indifference to reports of such harassment. *See Davis*, 526 U.S. at 650. "Deliberate indifference will often be a fact-laden question," for which bright lines are ill-suited. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 457 n. 12 (5th Cir. 1994). "Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Roe ex. Rel. Callahan v. Gustine Unified School Dist.*, 678 F.Supp.2d 1008, 1038 (E.D. Ca 2009) (citations omitted). A school district cannot avoid liability for being

deliberately indifferent by taking *any* remedial action, the response must be adequate given the circumstances. *Zeno v. Pine Plains Cent. School Dist.*, 702 F.3d 665, 666 (2d Cir. 2012) (noting a school's immediate discipline of harassing students was not sufficient given the circumstances). Acts that are "clearly unreasona*ble* in light of the known circumstances" equate to deliberate indifference. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). A school district may be deliberately indifferent where its response causes students "to undergo harassment or make[s] them liable or vulnerable to it." *Id.* at 644–45.

The Court erred in finding no reasonable jury could find that the school was not deliberately indifferent because: (1) Defendants did not offer any remedy to A.H.'s harassment of Plaintiffs and failed to follow up with promises to investigate, (2) Defendants decision to require Plaintiffs to forego use of the locker room so that the perpetrator could continue to use them is objectively unreasonable; and (3) Defendants did not attempt to provide any remedy for away games. Accordingly, the Court erred by dismissing Plaintiffs' claim for deliberate indifference.

First, the Court erred by finding Defendants offered any accommodation, much less a reasonable one. Defendants only offered "accommodation" was that Plaintiffs could change in the nurse's bathroom which was only available during home games. FAC ¶¶ 140–46. The Court's order also notes that "school officials advised Plaintiffs that their concerns would be addressed at a later time or escalated with the proper authorities." ECF 47, Page.ID 579 (quoting FAC ¶¶ 177, 186, 190). But school officials never actually ended up investigating the allegations over the three years that Plaintiffs continuously made them. FAC ¶¶ 168, 172, 177, 186, 190). This type of prolonged and unjustified delay by itself can constitute deliberate indifference. *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282 (11th Cir. 2007). Furthermore, simply pointing out that Plaintiffs could change in a separate bathroom is not an accommodation, it is just a restatement of fact. Accordingly, the Court erred

in dismissing Plaintiffs' Title VII claim as it relates to locker room privacy because Defendants' response was not reasonable considering the circumstances.

Second, Defendants' response was also not reasonable because their suggested accommodation punished the victims of the harassment, while allowing the harasser to enjoy the full benefits of the girls' locker room. FAC at ¶¶ 167–89. Plaintiffs were forced to forego use of the locker room, depriving them of comradery, instruction, and discussion that take place therein. *Id*. at 144. A "remedy" that only punishes the victim is not a reasonable one.

Third, even *if* Defendants' acts could in some manner be considered to have "remedied" the situation it only did so for home games. Defendants failed to even attempt to provide an accommodation for away games. FAC ¶¶ 144, 179, 413. This Court's order left open that A.H.'s locker room antics may constitute sexual harassment. ECF 47, Page.ID 579. A school can be found deliberately indifferent when it continues to use the "same ineffective methods to no acknowledged avail." *Donovan v. Poway Unified School Dist*., 167 Cal.App.4th 567, 611 (2008) (citation omitted). By attempting to offer an alternative arrangement during home games, the District acknowledged A.H.'s presence and antics in the girls' locker room posed a problem. Requiring Plaintiffs to change in the locker room with him during away games *does* constitute deliberate indifference.

This case is distinguishable from *Karasek v. Regents of Univ. of California*, 956 F.3d 1093 (9th Cir. 2020), where the Ninth Circuit found no deliberate indifference despite a nine-month delay because the university actively took steps to address the allegations. There, the school provided counseling services, assisted the complainant in filing a formal complaint, and issued a no-contact order against the alleged harasser. *Id.* By contrast, Plaintiffs here allege years of delay unaccompanied by meaningful protective measures or any completed investigation. *See, e.g.,* FAC ¶ 167–89 (noting near weekly complaints by Plaintiffs regarding A.H.'s presence in the

locker room). *Construed in Plaintiffs' favor, those facts are su*fficient to support a finding of deliberate indifference.

Given the seriousness and duration of the alleged misconduct, a reasonable jury could conclude that Defendants' response was clearly unreasonable. And the School's refusal to extend similar protections during away games supports an inference of deliberate indifference. This case, therefore, involves more than a disagreement over Plaintiffs' preferred remedy. Plaintiffs allege that the District's failure to act adequately left them vulnerable to ongoing sexual harassment. On these facts, a reasonable jury could conclude that the District's response amounted to deliberate indifference under Title IX.

2. *The Court Erred in Dismissing Plaintiffs' Claims for Failure to Provide Effective Accommodation and Failure to Provide Equal Treatment*

The Court *sua sponte* dismissed Plaintiffs' remaining Title IX sex-discrimination claims for failure to provide effective accommodation and failure to provide equal treatment, without notice or an opportunity for Plaintiffs to respond.

As a threshold matter, the Court erred procedurally by raising and deciding these issues on its own initiative. The Court itself acknowledged that Defendant School District's motion "does not provide any substantive argument as to effective accommodation." ECF 47, Page.ID 580–81. When a court dismisses a claim *sua sponte*, it "must give notice" of its intent to do so and provide the plaintiff, at a minimum, an opportunity to submit written opposition. *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir. 1981); *Reed v. Lieurance*, 863 F.3d 1196, 1207 (9th Cir. 2017) (citation omitted). Here, the Court effectively granted a Fed. R. Civ. P. 12(b)(6) dismissal on grounds never raised by Defendant, without notice or an opportunity to be heard. That was a procedural error.

a. Defendant School District failed to effectively accommodate Plaintiffs

The Court dismissed Plaintiffs' effective-accommodation claim by misapplying the Ninth Circuit's three-part test—specifically by applying the substantial proportionality test. ECF 47, Page.ID 580. The Court erred because that framework does not govern the circumstances presented here.

Plaintiffs argued that Title IX expressly requires separate sex-based volleyball and track teams in circumstances like these. ECF 42, Page.ID 490. The applicable Federal Register guidance contains a section entitled "Effective Accommodation of Student Interests and Abilities." 44 Fed. Reg. 71,417. Subsections (4) and (5) both provide an "application of the policy," but the Court only utilized subsection (5) while ignoring subsection (4). That was an error because subsection (4) establishes a prerequisite inquiry. The Court failed to address these arguments in its order.

Subsection (4) provides that when a school offers a separate team for one sex, it must also provide a separate team for the other sex where: (i) athletic opportunities for the excluded sex historically have been limited; (ii) sufficient interest exists to support a team; and (iii) members of the excluded sex lack sufficient athletic ability to compete successfully for positions on a single integrated team. 44 Fed. Reg. 71,418.

Plaintiffs have alleged these conditions are met and, therefore, there must be a separate girls' team. Women historically have faced limited opportunities in interscholastic athletics; there is sufficient interest to support separate female volleyball and track teams; and female athletes would not be able to compete successfully for positions on integrated male teams. FAC ¶¶ 124, 185, 202–03, 293; *see also Clark ex rel. Clark v. Ariz. Interscholastic Ass'n*, 886 F.2d 1191, 1193 (9th Cir. 1989) (recognizing the history of discrimination against women in interscholastic athletics). The District provides for male volleyball and track teams, and therefore, Title IX requires Defendant School District to maintain volleyball and track teams for female athletes. Title IX's use of "sex" refers to biological sex. FAC ¶ 59. The

"substantial proportionality" test that this Court used is inapplicable in these circumstances. *See* ECF 47 Page.ID 580. The Court clearly erred by dismissing Plaintiffs' claims using the "substantial proportionality" test to the present matter.

The Court also erred by interpreting Title IX's effective-accommodation requirement too narrowly. Title IX requires schools to provide women with an "equal opportunity in the selection of sports and levels of competition available." 44 Fed. Reg. 71,417. The Court focused only on whether female athletes had a substantially proportionate number of opportunities to participate. But equal opportunity under Title IX includes the opportunity to compete meaningfully and fairly, not merely the opportunity to appear on a roster.

Plaintiffs allege that A.H., a biological male, has dominated girls' track-and-field events and displaced female athletes from podium placements and competitive opportunities. FAC ¶¶ 108–135. Plaintiffs further allege that A.H.'s participation in girls' volleyball has created safety risks, including concussions and other physical injuries to female athletes. FAC ¶¶ 158–66, 203, 301, 307. Thus, even if A.H. occupies only one roster position, Plaintiffs allege that his participation disproportionately affects female athletes' competitive opportunities and physical safety and deprives them of equal levels of competition.

The purpose of Title IX's effective-accommodation requirement is to ensure that female athletes have a level of competition that accommodates their athletic abilities. 34 C.F.R. § 106.41(c)(1). Plaintiffs plausibly allege that permitting a biological male to compete in girls' sports undermines that objective by altering the competitive environment and reducing female athletes' opportunities to succeed on equal terms. The Court erred in dismissing the claim because, at the pleading stage, those allegations are sufficient to state a claim.

b. Defendant School District failed to provide equal treatment or opportunity

The Court also *sua sponte* dismissed Plaintiffs' equal-treatment claim on the ground that Plaintiffs had not identified any "sex-based difference in team policies" and had not alleged that Defendant School District treated boys' and girls' teams differently in administering its policies. ECF 47, Page.ID 581. As discussed above, dismissing the claim on grounds never raised by Defendant, without notice or an opportunity to respond, was itself a procedural error that deprived Plaintiff of a fair opportunity to argue the issue.

Substantively, the Court erred by adopting to narrow a view of Title IX's equal-opportunity requirement contrary to Title IX's requirements. Title IX is not limited to whether identical rules formally apply to both sexes. Rather, the statute and regulations are designed to ensure equality in athletic benefits, opportunities, and treatment. 34 C.F.R. § 106.41(c)(2)–(10).

Plaintiffs allege that A.H.'s participation in girls' track deprived female athletes of equal opportunities to compete and win. FAC ¶¶ 108–135. Courts have long recognized that physiological differences between males and females can materially affect athletic competition. In *Clark ex rel. Clark*, the Ninth Circuit observed that "due to physiological differences, males would displace females to a substantial extent if they were allowed to compete for positions on the volleyball team." 695 F.2d 1126, 1131 (9th Cir. 1982). Similarly, Justice Stevens explained that without sex-based classifications in competitive sports, "there would be a substantial risk that boys would dominate the girls' programs and deny them an equal opportunity to compete in interscholastic events." *O'Connor v. Bd. of Educ. of Sch. Dist. 23*, 449 U.S. 1301, 1307 (1980) (Stevens, J., in chambers). More recently, the Second Circuit held that allegations that female athletes were denied equal opportunities in track competitions by having to compete against transgender girls were sufficient to establish Article III injury. *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 46 (2d Cir. 2023).

Title IX's Equal Opportunity protects from more than just differences in "team policies" between girls' and boys' teams; Title IX was enacted to ensure women derive an equal benefit to males in the athletic arena. Plaintiffs plausibly allege that female athletes are denied equal athletic opportunities when they must compete against biological males, while male athletes compete only against similarly situated males. Those allegations go directly to Title IX's equal-opportunity protections.

Plaintiffs also allege that A.H.'s participation on the girls' volleyball team caused opposing schools to refuse to compete, thereby depriving Plaintiffs and their teammates of opportunities to participate in scheduled games. FAC ¶¶ 108–46. Those allegations describe a concrete loss of athletic opportunity sufficient to state a claim under Title IX.

Finally, the Court erred in concluding that equal treatment depends solely on whether formally identical rules are applied to boys' and girls' teams. Even the governing athletic rules themselves recognize sex-based physiological differences. For example, volleyball net heights differ for male and female athletes, and certain track-and-field events apply different performance standards by sex.[1]

Those distinctions reflect the reality that male and female athletic competition is structured differently to preserve equal competitive opportunity. Plaintiffs plausibly allege that Defendant's policies undermine that principle and thereby deny female athletes the equal opportunities Title IX was enacted to protect.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Reconsideration and the following relief:

1. Issue an order allowing Plaintiffs leave to amend their First Amended Complaint to seek nominal damages pursuant to section 1983 for violations of Plaintiffs' First Amendment Free Speech and Free Exercise rights against Liana Manu, Nancy Reyna, Peter Zamora, Shelley Morris, Todd Moerer, Denise Lopez, and Olga Alferez.

2. Issue an order reinstating Plaintiffs' sexual harassment claim under the locker room theory and effective accommodation and equal treatment claims.

DATED: June 5, 2026

ADVOCATES FOR FAITH & FREEDOM

/s/ Bradley Greenman
Bradley Greenman, Esq.
Attorneys for Plaintiffs

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 4,130 words, which complies with the word limit of L.R. 11-6.1.

DATED: June 5, 2026

ADVOCATES FOR FAITH & FREEDOM

/s/ Bradley Greenman
Bradley Greenman, Esq.
Attorneys for Plaintiffs